**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE CAMARGO ALEJO,<br><br>Defendant. | Case No. 17CR1369-H<br><br>MEMORANDUM DECISION DENYING MOTION FOR NEW TRIAL OR DISMISSAL OF THE INDICTMENT |

I.  BACKGROUND

On December 27, 2016, Defendant Jose Camargo-Alejo was charged by way of single-count information and waiver of indictment with felony assault on a federal officer in violation of Title 18, United States Code, Section 111(a) and (b). (Doc. Nos. 12 and 13 in 16CR3019-H.) On May 25, 2017, a grand jury returned a single-count indictment charging the Defendant with felony assault on a federal officer with physical contact in violation of Title 18, United States Code, Section 111(a)(1). (Doc. No. 1.) The case proceeded to a jury trial on June 6, 2017. (Doc. No. 23.) On June 8, 2017, a jury found the Defendant guilty of assault on a federal officer with physical contact. (Doc. No. 39.)

Following trial, the Defendant filed a motion for a new trial or dismissal of the

indictment (Doc. No. 48). Thereafter, the United States' filed a response in opposition (Doc. No. 59), the Defendant filed a reply (Doc. No. 60), and the United States' filed a supplemental brief under seal. The Court heard argument on the motions on September 11, 2017 and October 6, 2017. (Doc. Nos. 73 and 78.) On December 11, 2017, after review of the briefing filed by the parties, the Court held a post-trial hearing. Assistant United States Attorney Janaki S. Gandhi appeared on behalf of the United States, and attorneys Chloe S. Dillon and Rebecca F. Fish of Federal Defenders of San Diego, Inc. appeared on behalf of the Defendant. (Doc. No. 94.)

The Defendant requests a new trial or dismissal of the indictment on the basis that the United States violated its obligations under Brady, Giglio, and Rule 16. The Defendant's motion is based in part on documents disclosed by the United States during trial from the personnel file of defense witness Border Patrol Agent Ehab Rahman and in part based on evidence the Defendant claims to have discovered during and after trial. The Defendant argues that the United States' disclosure of the documents during trial deprived her of the opportunity to put on an effective defense. To support her argument, the Defendant submits a declaration from each of her counsel, wherein they declare they would have pursued a different defense strategy had they received the documents in pre-trial discovery. They also declare that the documents, along with other information learned during and after trial, confirmed their belief that Agent Rahman intimidated certain trial witnesses, including an intended defense witness ("intended witness").

In response, the United States argues that it did not violate its obligations under Brady, Giglio, or Rule 16, and that the Defendant has not met her burden to demonstrate that a new trial or dismissal is warranted. The United States argues that its obligations under Brady, Giglio, or Rule 16 do not apply to defense witnesses, apart from the general duty to disclose exculpatory material. The United States argues that the documents disclosed during trial were not exculpatory in nature because they were from 2008 and derived from Agent Rahman's personnel file; they did not bear upon the facts of the case against the Defendant. In addition, the United States argues that because the Defendant had the

opportunity to impeach Agent Rahman (a witness called by the Defendant) and four witnesses similarly situated to their intended witness during trial, as well as the opportunity to voice any concerns with the Court during trial, prejudice did not ensue.

The record supports the United States. On November 2016, the Defendant was detained for immigration purposes at a facility known as "Barracks 5," maintained by the United States Border Patrol. The Defendant was detained with other women at the facility.

On November 30, 2016, the Defendant assaulted Border Patrol Agent Monica Valdovinos, resulting in the Defendant's arrest in the instant case. Approximately nine or ten women were present at Barracks 5 on that date. Two videos depict the assault between the Defendant and Agent Valdovinos. During pre-trial investigation, Border Patrol Agents Ehab Rahman and Luis Ramos conducted interviews of several women who were detained at Barracks 5 on November 30, 2016, and the surrounding days. Agent Rahman interviewed 11 women and Agent Ramos interviewed, or attempted to interview, six women.

In advance of trial, the United States provided the Defendant with contact information for all 17 female detainees who were interviewed, along with Agent Rahman and Agent Ramos's reports of their interviews. The intended witness was one of the 17 women interviewed. None of the female detainees were eyewitnesses to the assault itself, but they were able to describe what they saw and heard leading up to the assault, what they heard when the assault occurred, and what they saw and heard after the assault occurred.

Defendant's counsel and the defense investigator conducted their own interviews of the 17 women, including the intended witness, prior to trial. The defense investigator called the intended witness three times in March 2017, and the defense investigator and the two defense attorneys interviewed the intended witness in person at the Mesa Verde Detention Facility in Bakersfield, California, on March 28, 2017.

Trial commenced on June 6, 2017. In its case-in-chief, the United States called Agent Valdovinos, an EMT who evaluated Agent Valdovinos, and four of the female detainees. The Defendant cross-examined all of the United States' witnesses. During the Defendant's case-in-chief, she called, among others, Agent Rahman. She called him to examine him

3

about his investigation. Prior to Agent Rahman's testimony, the United States produced documents from Agent Rahman's personnel file to the Court. The documents described events from 2008. The Court reviewed the documents in camera and decided they did not contain Brady or Rule 16 information. However, the Court elected to permit the Defendant to inspect the documents and impeach Agent Rahman with them.

The Defendant had also subpoenaed the intended witness under Federal Rule of Criminal Procedure 17(b), but elected not to call the intended witness to the stand. The Defendant did not raise any concerns with the Court during trial regarding the intended witness.

During and after trial, counsel for the Defendant communicated with the intended witness's attorney. Defense counsel received an email from the intended witness's attorney on the second day of trial (June 7, 2017) and spoke via telephone with the attorney after trial concluded on June 8, 2017. Through the emails and phone conversation, defense counsel concluded and represented to the Court in their declarations that the intended witness had received multiple calls from a federal agent, a federal agent had contacted the intended witness's relatives, and the intended witness feared retaliation by the government if she testified due to admonitions she had received from Agent Rahman .

Email communication between the defense counsel and the intended witness's attorney has been produced and submitted to the Court. The email communication is dated June 7 and 8, 2017, and has the following as its subject line: "US Marshals holding witness and compelling testimony?" The un-redacted parts of the email state the attorney's concern that "ICE moved the client from [redacted] where she has been held for the past 6.5 months to the [redacted] last Friday . . . ICE is telling [redacted] that the client is now in the custody of the U.S. Marshals because she was a witness . . . and that she will be required to testify as a witness." The email proceeds to state that the attorney wanted to negotiate for the intended witness's release because the intended witness feared retaliation if she testified while in custody. The email chain does not mention Agent Rahman or any other federal agent.

4

The Court notes that under Federal Rule of Criminal Procedure 17(b), "[u]pon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense." Accordingly, neither counsel for the United States nor counsel for the intended witness were aware of the authorized Rule 17(b) subpoena issued by the defense and were consequently unaware as to the reason the intended witness was transferred from immigration custody to U.S. Marshals custody.

Recorded custodial conversations of the intended witness from the Otay Mesa Detention Facility, where she was held in June 2016 due to the defense trial subpoena, shows that the defense investigator, Aaron Rodebaugh, repeatedly called and visited the intended witness. When the attorney asked the intended witness for the name of the person who had been calling and visiting her in custody, the intended witness provided the name and telephone number for Aaron Rodebaugh.

A recorded custodial conversation of the intended witness reveals her telling her sister that when she was interviewed by the defense, she did not speak in favor of either the Defendant or the government, but instead told the defense that she did not see anything at Barracks 5. Neither Agent Rahman, nor any other federal agent or actor, intimidated or threatened the female detainees interviewed in relation to this case, including the four female witnesses who testified at trial. Neither Agent Rahman, nor any other federal agent or actor, specifically intimidated or threatened the intended witness.

Agent Rahman's admonitions regarding the consequences of uttering false statements to a federal officer did not unduly pressure, intimidate, or deter the intended witness, or any other witness, from testifying. The intended witness's concerns regarding her testimony resulted from the multiple phone calls from the defense investigator, the in-person interview by the defense investigator and the defense attorneys, her incomplete knowledge of the reason for her testimony, and her general fear of testifying in a criminal case while her immigration case was pending.

The Defendant's decision not to raise any concerns about the intended witness during

trial and not to call the intended witness to testify was a strategic trial decision made by defense counsel, and not a result of interference by Agent Rahman or any other government actor. Furthermore, the intended witness's testimony was cumulative of the testimony provided by the four female witnesses called by the United States, who were all subject to cross-examination by the Defendant. In sum, the record does not support any prosecutorial misconduct, <u>Brady</u> violation, or Rule 16 violation to justify a new trial or dismissal of the indictment.

II. <u>LEGAL STANDARDS</u>

Pursuant to Federal Rule of Criminal Procedure 33, upon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. In order to grant a new trial based on a <u>Brady</u> violation, a district court must find that the evidence at issue is favorable to the defendant, undermines the court's confidence in the outcome, and there is a reasonable probability of a different result. <u>United States v. Doe</u>, 705 F.3d 1134, 1152-53 (9th Cir. 2013). In order to grant a new trial based on a discovery violation by the government, the district court must find a likelihood that the verdict would have been different had the evidence at issue been disclosed. <u>Id</u>. Finally, to prevail on a motion for new trial based upon newly discovered evidence, the district could must find that the defendant has shown the following: "(1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." <u>United States v. Kulczyk</u>, 931 F.2d 542, 548 (9th Cir. 1991), <u>see also</u> <u>United States v. Colon-Munoz</u>, 318 F.3d 348, 358 (1st Cir. 2003) (to prevail on a motion for a new trial based on newly discovered evidence, the defendant must establish that the evidence would create an actual probability – not just a reasonable probability – that an acquittal would have resulted if the evidence had been available).

Under <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the government must disclose

evidence that is favorable to the accused and material either to guilt or punishment. A Brady violation occurs when: (1) evidence is favorable to the accused because it is exculpatory or impeaching; (2) the evidence was suppressed by the government, either willfully or inadvertently; and (3) prejudice ensued. Strickler v. Greene, 527 U.S. 263, 281-82 (1999); see also Milke v. Ryan, 711 F.3d 998, 1012-13 (9th Cir. 2013) (citing Strickler). Favorable evidence is "material" (and prejudice ensues) if there is a reasonable probability that disclosure of the evidence would have changed the outcome of the proceeding. United States v. Bagley, 473 U.S. 667, 682 (1985).

With regard to impeachment material, the government is obligated to disclose information that could be used to impeach its own witnesses. See Giglio v. United States, 405 U.S. 150, 153-55 (1972). With regard to law enforcement officers it intends to call to testify, the government has a duty to examine the personnel files of those law enforcement officers for impeachment or exculpatory material, which may need to be furnished to the court or defendant if the files contain information that is or may be material to the defendant's case. United States v. Henthorn, 931 F.2d 29, 31 (9th Cir. 1991).

Federal Rule of Criminal Procedure 16 provides that a criminal defendant is entitled to discovery of materials "which are within the possession, custody, or control of the government, and which are material to the preparation of the defendant's defense." Rule 16 permits discovery that is "relevant to the development of a possible defense." United States v. Clegg, 740 F.2d 16, 18 (9th Cir. 1984). To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality. United States v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984); United States v. Cadet, 727 F.2d 1453, 1468 (9th Cir. 1984).

To dismiss an indictment, "[a] court may exercise its supervisory powers to dismiss an indictment in response to outrageous government conduct that falls short of a due process violation." United States v. Ross, 372 F.3d 1097, 1109 (9th Cir. 2004); see Fernandez, 388 F.3d at 1239. Dismissal on this basis requires "flagrant misbehavior" and "substantial prejudice" to a defendant. United States v. Kearns, 5 F.3d 1251, 1254 (9th Cir. 1993); see Fernandez, 388 F.3d at 1239; Bank of Novia Scotia v. United States, 487 U.S. 250, 255–56

(1988) ("[A] district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant."). A defendant must "demonstrate misconduct by a preponderance of the evidence." Vavages, 151 F.3d at 1188 (citing United States v. Lord, 711 F.2d 887, 891 n. 3 (9th Cir. 1983)). With regard to claims of government interference with a witness, "[t]he substantial interference inquiry is extremely fact specific," and a defendant must prove that under the totality of the circumstances, "the substance of what the [government] communicates to the witness is a threat over and above what the record indicates is necessary[.]" Id. at 1190 (internal quotations and citations omitted). The Ninth Circuit has held that in many circumstances, warning a witness about the possibility and consequences of perjury charges is warranted. See, e.g., Williams v. Woodford, 384 F.3d 567, 603 (9th Cir. 2004) ("merely warning a witness of the consequences of perjury does not unduly pressure the witness's choice to testify or violate the defendant's right to due process.").

III. CONCLUSION

Based on the appropriate legal standards and the record, the Court denies the motion for new trial or dismissal of the indictment. The United States did not violate its obligations under Brady, Giglio, or Rule 16. Because the disclosed documents contained impeachment information for a defense witness and not exculpatory information, the United States was not obligated under Brady, Giglio, or Rule 16 to produce the documents. The Court concludes that the information in the documents has not undermined the Court's confidence in the outcome of the trial and that there is no reasonable probability of a different result. Moreover, with regard to the Defendant's newly discovered evidence, the Court concludes that the Defendant has not established that the evidence creates an actual probability that an acquittal would have resulted if the evidence had been available sooner.

The Court further concludes that the Defendant has not demonstrated that the government engaged in misconduct. Additionally, the Court notes that the Defendant was convicted of assault on a federal officer with physical contact. The video evidence in support of the conviction was overwhelming. See United States v. Morfin, 151 F.3d 1149,

1151 (9th Cir. 1998) ("Because the direct and circumstantial evidence against [the Defendant] was overwhelming, we are unable to conclude that the error 'affect[ed] [his] substantial rights.'") Nevertheless, because the conviction was for assault on a federal officer with physical contact and not with bodily injury as initially charged, the Court imposed a below guideline sentence of 15 months in custody. Accordingly, the Court DENIES the Defendant's motion for a new trial or dismissal of the indictment.

IT IS SO ORDERED.

Dated: December 11, 2017

HONORABLE MARILYN L. HUFF
UNITED STATES DISTRICT JUDGE